## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ASHLEY S.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   24-cv-1728** |
| | : | |
| **MICHELLE KING,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **January 28, 2025**

Ashley S. ("Plaintiff") brought this action seeking review of the Commissioner of Social Security Administration's ("SSA") decision denying her claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 403-433, 1381-1383f. This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 6) is **GRANTED**.

## I.      PROCEDURAL HISTORY

On March 23, 2022, Plaintiff protectively filed for SSDI and SSI, alleging disability since December 10, 2021, due to complex regional pain syndrome ("CRPS"), a torn ACL in her right knee, loss of cartilage in both knees, arthritis, high blood pressure, anxiety, depression, and post-traumatic stress disorder ("PTSD"). (R. 113, 185-207). Plaintiff's application was denied at the initial level. (R. 110-19). Plaintiff then filed a request for reconsideration, which was also denied. (R. 119-32). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(R. 133-34).  Plaintiff—represented by counsel—as well as a vocational expert ("VE") testified at the May 18, 2023, administrative hearing.  (R. 34-54).  On June 13, 2023, the ALJ issued a decision unfavorable to Plaintiff.  (R. 12-33).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on February 23, 2024, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On April 20, 2024, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On April 25, 2024, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(c).  (Consent, ECF No. 4).  On August 7, 2024, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 6).  The Commissioner filed a Response on September 5, 2024.  (Resp., ECF No. 7).  Plaintiff filed a Reply on September 17, 2024.  (Reply, ECF No. 8).

## II.    FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

### A.    Medical Evidence

Plaintiff injured her right knee in December 2020.  (R. 302).  An MRI revealed quadriceps tendinopathy, a possible tear of the posterior horn of the lateral meniscus, findings suggesting chondromalacia patella, and edema in the subcutaneous fat superficial to the imaged distal quadriceps tendon, patella, patellar tendon, and proximal tibia.[1]  (R. 327-28).  She initially

---

[1]  Later medical records are ambiguous as to whether Plaintiff indeed tore her meniscus, or whether she simply sprained her knee on this date.  (R. 23, 59, 288, 303, 318, 328, 379, 515, 526, 535).  The ALJ ultimately did not resolve this ambiguity in his ruling, (R. 23), nor does it appear that this fact was dispositive to his ultimate decision.

began treating for her knee pain with Wellspan Orthopedics in Lebanon.  (R. 301-39).  On

September 29, 2021, Plaintiff fell while at work, causing further damage to her right knee.  (R.

406).  On December 9, 2021, an MRI revealed a tear to her anterior cruciate ligament ("ACL")

proximally.  (R. 62, 379).

On January 3, 2022, Plaintiff presented to York Memorial Hospital with pain in her right

leg along with a "bluish" discoloration to that leg that appeared to be "following her veins."  (R.

340).  Stephanie Lynn Ashton, a physician's assistant, advised Plaintiff to continue to follow the

orthopedic treatment plan[2] that she had in place with Wellspan Orthopedics.  (R. 343).

Plaintiff continued to treat with several medical providers over the course of 2022 for her

torn ACL, pain in both her legs, and certain mental health issues.  (R. 377-621).  Between

January 5 and March 16, 2022, Plaintiff treated with orthopedist Dr. Eric Bontempo in Reading.

(R. 395-405).  Throughout the duration of her treatment, Plaintiff continued to experience pain,

tremors, and spasms in her right leg, and the discoloration of her skin spread from her right leg to

her abdomen and her left leg.  (R. 396).  She was diagnosed with hyperhidrosis, as the skin over

her right leg was abnormally red, tender, and prone to excessive localized sweating.  (R. 397).

The skin over her right leg was also mottled—it had a "pitted" appearance with abnormal

coloration—due to the lack of adequate blood supply to the area.  (*Id.*).  Dr. Bontempo diagnosed

Plaintiff with CPRS, noting that her CRPS in her right leg was "actually quite severe."  (R. 398).

Adam J. Weinstein—a board-certified neurologist with Neurology Associates of the

Main Line, PC—examined Plaintiff on February 21, 2022.  (R. 380-84).  Dr. Weinstein noted

---

[2]  Though she was advised that an ACL reconstruction surgery might have been the best
treatment plan, Plaintiff did not have health insurance at the time, and therefore resolved to treat
her injury and pain "nonoperatively" until such time that she did have health insurance.
(R. 570).

"similar vasomotor change in the left leg although not as prominent, and somewhat in the right arm." (R. 380). His examination of Plaintiff revealed "livedo reticularis with vasomotor change in the right greater than left legs as well as on the right arm." (R. 382). Examination of the right leg showed at least 4/5 motor strength in the right iliopsoas, quadriceps, hamstring, tibialis anterior, and gastrocnemius muscles with pain due to allodynia. (*Id.*). Plaintiff also exhibited antalgic gait and was unable to tandem walk. (*Id.*). Dr. Weinstein reported absent Babinski and Hoffman signs. (R. 382). He noted severe allodynia throughout Plaintiff's right lower extremity with associated hypersensitivity to pinprick throughout her right thigh, leg, and foot. (R. 382-83).

Plaintiff also treated with Dr. Ronald B. Lincow of Pain Management Physicians in Lebanon. (R. 406-25, 465-95). Throughout her treatment, Plaintiff continually rated her pain between 4/10 and 10/10, usually settling around 6/10. (R. 465-74, 535-43). She maintained that her pain was worse when standing, walking, and climbing stairs. (R. 473). Dr. Lincow diagnosed Plaintiff with CRPS of her right leg. (R. 465-70, 473-95). He also noted that Plaintiff had significant swelling in both legs and that she experienced significant temperature changes in her lower extremities. (R. 467). On January 24, 2022, Dr. Lincow determined that Plaintiff was "able to perform sedentary duties [only, while at work]. No lifting more than 10 pounds. No standing more than 30 minutes, No sitting more than 1 hour. Breaks as tolerated and breaks upon request. No kneeling, twisting, bending, or squatting." (R. 476).

On March 7 and April 1, 2022, Plaintiff underwent right-sided L3 lumbar sympathetic blocks with fluoroscopic guidance. (R. 288, 417, 469). These procedures were intended to, but did not, relieve Plaintiff's pain. (R. 467).

On April 25, 2022, Dr. Kelsey Young examined Plaintiff. (R. 435-40). Dr. Young noted

that Plaintiff "developed severe CRPS that has limited her functionality and mobility," and that "patient is functionally limited in work/home/recreational activities." (R. 439). Physical examination showed "clear remodeling of skin 2/2 CRPS" pertaining to Plaintiff's right lower extremity, with the left lower extremity not examined due to CRPS. (R. 440).

Two doctors of osteopathic medicine—John Grandrimo and Adam Buerk—completed independent medical evaluations ("IME") of Plaintiff. (R. 511-30). After reviewing the medical records related to her knee, Dr. Grandimo performed a physical examination of Plaintiff. Dr. Grandimo noted that Plaintiff walked with an antalgic gait, used a cane, and had a brace on her right lower extremity. (R. 515). A focal exam of the right knee showed mottling of the skin starting from her midthigh down to her right foot. (*Id.*). The right leg had a limited range of motion and was "extremely hypersensitive" to the touch. (*Id.*). There was a mild sensitivity of the left lower extremity, especially on the tibia. (R. 515-16).

Dr. Buerk performed his IME on February 28, 2022. (R. 521). Dr. Buerk noted that Plaintiff ambulated with the use of a cane and was able to very slowly rise from her chair and move about the room. (R. 524). Dr. Buerk also noted that Plaintiff appeared in pain whenever she moved, and that she stated that she had pain "everywhere." (*Id.*). His examination of Plaintiff's lower extremities "show[ed] significant pain with any motion of the lower extremity joints." (*Id.*). Moreover, the skin over Plaintiff's lower extremities was "blotchy with [a] deep red spiderweb pattern." (*Id.*). Dr. Buerk opined that Plaintiff had developed significant chronic pain in her right lower extremity that was "out of proportion to an ACL injury." (R. 527). It was for that reason that Dr. Buerk agreed with the CRPS diagnosis. (*Id.*). Dr. Buerk also expressly stated that, though it initially "appear[ed] as if [Plaintiff] was showing signs of symptom magnification, . . . upon seeing the changes of her skin and the increased hidrosis in her lower

extremity, [it was] most likely related to [the CPRS] that she ha[d] developed." (*Id.*).

On August 16, 2022, Dr. Wadicar Fabian Nugent, a State agency medical consultant, concluded that Plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally. (R. 62). Dr. Nugent further concluded that Plaintiff could push and/or pull without limitation in her upper extremities but was "limited" in her ability to do so with her lower extremities. (*Id.*). He also concluded that any work that Plaintiff performed would have to be accompanied by certain functional limitations: stand and/or walk and sit for two and six hours, respectively, in an eight-hour workday; occasionally climb ramps or stairs, balance, kneel, crouch and crawl; frequently stoop; and never climb ladders, ropes, or scaffolds. (R. 62-63). Moreover, Dr. Nugent concluded that Plaintiff had certain "environmental limitations," including avoiding concentrated exposure to extreme cold or heat, vibration, or workplace hazards such as machinery or heights. (R. 63).

### B.    Non-Medical Evidence

The record also contains nonmedical evidence. Plaintiff testified at the May 18, 2023, administrative hearing that she was born on September 24, 1986, and was 35 years old on the alleged disability onset date. (R. 37). Plaintiff received her GED, and attended "some" college courses, but did not graduate. (*Id.*).

Plaintiff additionally testified that she was able to dress herself, but that she needed assistance showering because her "legs [did not] work." (R. 38). Further, she never went grocery shopping, and she rarely completed other household chores such as cooking for herself, washing dishes, or doing laundry. (R. 38-39). Plaintiff rarely drove anywhere. (R. 39). She also testified that she could not bend at the waist anymore because the pain in her knee would be extreme. (R. 40-41). Moreover, she testified that she avoided climbing stairs if she could help it,

and she could not climb ladders. (R. 41). When asked about her ability to sit and stand, Plaintiff answered that some days she could not stand for more than a minute at a time, but that other days she could stand for five to 10 minutes. (R. 42).

Brian Bierley, a VE, testified as to Plaintiff's past relevant work history and her ability to perform certain types of work based on her current physical and mental limitations. Bierley testified that Plaintiff had previously worked as a warehouse laborer and a construction worker. (R. 52). Bierley noted that these two occupations were defined as medium/unskilled and heavy/semi-skilled, respectively. (*Id.*). Assuming that Plaintiff could perform light work with certain limitations,[3] Bierley testified that there were jobs available in the national economy that Plaintiff could perform. (R. 52-53). Specifically, Bierley gave three examples of jobs that were available in sufficient numbers: (1) electrical assembler, (2) small products assembler, and (3) and electronics worker. (R. 53). Each of these jobs were defined as "light [work] and unskilled." (*Id.*).

## III.    ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

---

[3] These limitations included: (1) a sit/stand option—defined as a "stand and walk limitation of two hours, [with] frequent stoop[ing], occasional climbing of ramps and stairs, balance[ing], and crouch[ing]"; (2) never engaging in bipedal foot control operation; (3) no climbing ladders, ropes, or scaffolds; (4) no kneeling or crawling; (5) avoiding exposure to extreme cold, extreme heat, vibration, and other hazards such as heights and machinery; (6) no commercial driving; and (7) working in a low stress occupation—defined as having only occasional changes in the work setting and an occasional interaction with the public, coworkers, and supervisors. (R. 52-53).

1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2026.

2.    The claimant has not engaged in substantial gainful activity since December 10, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: bilateral lower extremity chronic regional pain syndrome, chronic tear of right ACL with fixation, right quadricep tendonitis, depression, anxiety, and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires a sit/stand option defined as standing/walking limitation of two hours; she can frequently stoop; she can occasionally climb ramps and stairs, balance, and crouch; she can never perform bilateral foot control operation, climb ladders, ropes, or scaffolds, kneel, or crawl; she must avoid exposure to extreme cold, extreme heat, vibration, and hazards such as heights and machinery; she can do no commercial driving; she must work in a low stress occupation defined as having only occasional changes in the work settings; and she is limited to occasional interaction with the public, coworkers, and supervisors.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on September 24, 1986 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 10, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 17-29).


## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work.  If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal

issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).


## V.    DISCUSSION

In her request for review, Plaintiff raises two issues: (1) the ALJ's RFC determination

was in error, as the stand/walk limitation imposed by the ALJ is inconsistent with the capability

to perform light work; and (2) the ALJ erred in rejecting Dr. Lincow's medical opinion regarding

Plaintiff's CRPS diagnosis and its impact on her functional capacity.  (Pl.'s Br., ECF No. 6, at 3).

### A.    Consistency of the RFC

#### 1.    The Parties' Arguments

Though Plaintiff frames the first issue as whether the ALJ's decision is "supported by

substantial evidence," Plaintiff's brief makes clear that, in substance, she challenges the internal

consistency of the RFC fashioned by the ALJ.  (*Id.* at 3-4).  Plaintiff argues the limitation

imposed by the ALJ—that Plaintiff was limited to standing/walking for a maximum of two hours

in an eight-hour workday, with a sit stand option—necessarily requires a finding that Plaintiff

was able to perform sedentary work only, not light work as determined by the ALJ.  (*Id.* at 4-6).

Plaintiff cites to 20 C.F.R. §§ 404.1567(b), 416.967(b) and SSR 83-10, 1993 WL 31251 (Jan. 1,

1983), for the proposition that "light work requires *frequent* standing and walking."  (*Id.* at 4

(emphasis added)).  Under these authorities, light work requires the ability to stand and walk for

one-third to two-thirds of an eight-hour workday, or up to 5.3 hours.  *See* SSR 83-10, 1983 WL

31251, at *5-6; 20 C.F.R. §§ 404.1567(b), 416.967(b).  Pursuant to the RFC, Plaintiff can stand

or walk for a *maximum* of two hours—a mark well below the stand/walk component for light work. Therefore, according to Plaintiff, the ALJ's ruling that she could perform light work is internally inconsistent, based on the standing/walking limitation that was imposed as part of the RFC. (Pl.'s Br., ECF No. 6, at 4).

In response, the Commissioner argues that Plaintiff's contention regarding the internal consistency of the standing/walking limitation imposed by the ALJ has already been raised and rejected by courts in this circuit. (Resp., ECF No. 7, at 5). The Commissioner notes that under governing precedent, there is nothing "oxymoronic" in finding that a plaintiff can perform a limited range of light work, where the evidence shows that the plaintiff can perform "some, though not all" of the exertional requirements of a particular exertional level. (*Id.* at 5 (quoting *Santiago v. Barnhart*, 367 F. Supp. 2d 728, 733 (E.D. Pa. Apr. 12, 2005))); *see also Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003) (noting that a claimant's residual functional capacity did not "fall neatly into either category"—either sedentary or light work—and thus, the ALJ properly utilized the testimony of a vocational expert to determine whether the plaintiff could perform some, but not all, of the exertional requirements for light work). Therefore, according to the Commissioner, the ALJ did not err[4] by: (1) determining that Plaintiff could perform only some of the exertional requirements of light work; (2) determining that Plaintiff's RFC therefore did not fit squarely within either sedentary or light work; and (3) utilizing the VE's testimony to determine whether any jobs were available for someone with Plaintiff's particular background and physical capabilities. (*Id.*, ECF No. 7, at 4-8).

---

[4] The Commissioner also argues that even if the ALJ erred in determining that Plaintiff could perform light work, such an error would be harmless here, as the ALJ further found that Plaintiff could perform sedentary work, and that Plaintiff was therefore not disabled. (Resp., ECF No. 7, at 8).

### 2.    Analysis

A claimant's RFC is what she can still do despite her established impairments.  20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).  A claimant's RFC may "be expressed in terms of the

exertional levels of work[:] sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996

WL 374184, at *1 (July 2, 1996).  Light exertion work has three core components: (1) the ability

to lift up to 20 pounds occasionally; (2) the ability to lift and carry up to 10 pounds frequently—

that is, one-third to two-thirds of a workday; and (3) either "a good deal of walking or standing,"

or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§

404.1567(b), 416.967(b).  A person who can do "substantially" all those things is capable of the

"full" range of light work.  *Id.*; *see also* SSR 83-10, 1983 WL 31251, at *5–6 (explaining the

"full" range of light work entails walking or standing, off and on, for a total of about six hours

per day).

Here, Plaintiff argues that the ALJ's findings were internally inconsistent because the

ALJ imposed a stand/walk limitation of two hours maximum per workday, with appropriate

breaks.  However, notwithstanding that the ALJ found that Plaintiff had several medical

impairments that limited her functional capacity,[5] the ALJ found, *inter alia*, that Plaintiff could

still perform a limited range of light work based on her unlimited ability to push and pull with

her upper extremities.  (R. 20).  Contrary to Plaintiff's contentions, an ALJ may find the claimant

can do a reduced range of light work—something less than the full range of light work—but

which still exceeds the criteria of sedentary work.  *See Santiago*, 367 F. Supp. 2d at 733 (where

the evidence shows that the plaintiff can perform some, though not all, of the exertional

---

[5]  These medical impairments included bilateral lower extremity CRPS, a chronic tear of
the right ACL, right quadricep tendonitis, depression, anxiety, and PTSD.  (R. 17-18).

requirements of a particular range, a finding that the claimant can perform a limited range of the exertional requirements for that exertional level is appropriate) (citing *Boone*, 353 F.3d at 210).

Based on these findings, and with the aid of a VE, the ALJ found that there were jobs available in the national economy that Plaintiff could perform. Where a claimant's exertional abilities fall "somewhere 'in the middle'" of two categories, "more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability," and an ALJ should seek input from a VE about job availability for someone with the claimant's background and abilities. SSR 83-12, 1983 WL 31253, at *3 (Jan. 1, 1983). That is precisely what the ALJ did here. (R. 28 (noting that Plaintiff's "ability to perform all or substantially all of the requirements of [light work] ha[d] been impeded by additional limitations," and relying on the VE to determine "whether jobs exist[ed] in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity")). Nothing about the ALJ's methodology in this respect was error.

Plaintiff cites various cases endorsing the proposition that an ALJ may not make conflicting findings of fact related to a claimant's RFC.[6] Though this Court agrees with that

---

[6] Plaintiff maintains that the following cases support her argument: *Reshma A. v. Kijakazi*, No. 22-cv-5617, 2023 WL 6121502, at *3-4 (D. N.J. 2023) (ALJ's RFC finding for light, with ability to stand/walk for a total of about 3 hours in an 8 hour work day, was internally contradictory and reflected capacity for sedentary, not light, work); *Oropeza-Hernanez v. Kijakazi*, No. 7:22-cv-0230, 2023 WL 2575838, at *4-5 (S.D. Tex. 2023); *Bachan v. Berryhill*, No. 17-4665, 2018 WL 6715892, at *3 (E.D. Pa. 2018); *Villarreal v. Colvin*, 22. F.Supp.3d 835, 848-850 (W.D. Tex. 2018) (following *Ferdin v. Colvin*, NO. SA-15-CA-29-DAE, 2015 WL 7767980, at *11 (W.D. Tex. 2015) in remanding where "light" RFC was contradicted by limitation to less than the frequent range of standing and walking); [] *Slade v. Comm'r of Soc. Sec.*, No. 17-12684, 2018 WL 3827396, at *3-6 (E.D. Mich. 2018) (remanding where there was an inherent inconsistency between light work and the RFC); *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp 3d 956, 960-61 (E.D. Mich. 2017) (following *Slade*); *Franklin v. Berryhill*, No. 3:16-cv-2284, 2017 WL 2080196, at *8-11 (M.D. Pa. 2017); *Bisceglia v. Colvin*, No. 3:15-cv-83, 2016 WL 1248860, at *7-8 (E.D. Va. 2016) (remanding where ALJ assessed a light work RFC but limited claimant to less than the frequent range of standing/walking); *Ford v. Colvin*, No.

proposition generally, that is not what occurred here.  Instead, the ALJ found that Plaintiff was limited in her ability to stand, walk, lift, and climb, but that she was still able to push and pull "20 pounds occasionally and 10 pounds frequently with [her] bilateral upper extremities" from a sitting position.  (R. 26).  Thus, she retained the ability under the RFC to "sit[] most of the time with some pushing and pulling of arm . . . controls"—an ability consistent with one of the exertional components of light work.  20 C.F.R. §§ 404.1567(b), 416.967(b).  The ALJ's findings are therefore not inconsistent, but simply an acknowledgment that Plaintiff's medical impairments impact her lower extremities more than her upper extremities, and that she can perform some, but not all, of the exertional components of light work.  *See Santiago*, 367 F. Supp. 2d at 733.  Accordingly, this Court declines to remand the matter on this basis.

### B.    Dr. Lincow's Opinion Regarding Plaintiff's CRPS

#### 1.    The Parties' Arguments

Plaintiff next takes issue with how the ALJ accounted for her CRPS diagnosis.  Plaintiff argues that the ALJ's rejection of Dr. Lincow's medical opinion regarding the severity of Plaintiff's CRPS was error for two reasons: (1) the ALJ did not follow the guidelines contained

---

1:14-cv-01046-RGA, 2015 WL 4608136, at *7-8 (D. Del. 2015) (remanding where ALJ's RFC contradicted his characterization of it as limiting plaintiff to light work and following *Campbell v. Astrue*, No. 09-5356, 2010 WL 4689521, at *3-6 (E.D. Pa. 2010)); *Riley v. Colvin*, No. 3:13-cv-1223, 2014 WL 4796602, at *8 (M.D. Pa. 2014) (following *Campbell* and finding that, "[w]hen apparent internal inconsistencies in an ALJ's [RFC] may have an outcome determinative impact upon a social security determination under the Medical Vocational Guideline grids," remand to clarify these inconsistencies is typically necessary).

In contrast to the instant case, the cited cases involved truly contradictory factual findings, not simply an RFC that did not allow for the full range of a particular exertional level.  For instance, the court in *Reshma A.* noted that "the RFC states simultaneously that Plaintiff can stand, *at most*, for 3 hours per day, but also that Plaintiff can 'frequently' lift 10 pounds, which requires Plaintiff to stand *more than* 3 hours per day."  2023 WL 6121502, at *4 (emphasis in original).  While that case clearly represents an internal contradiction, the RFC fashioned in the instant case does not.

in SSR 03-02p for evaluating the medical opinions of treating providers; and (2) the ALJ's stated

reason for rejecting Dr. Lincow's opinion was insufficient, considering the broader medical

record.  (Pl.'s Br., ECF No. 6, at 6-15).

      Plaintiff points to language contained in SSR 03-2p, which states that "[m]edical

opinions from treating sources about the nature and severity of an individual's impairment(s) are

entitled to deference and may be entitled to controlling weight[, if the opinion] . . . is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the case record."  (*Id.*); SSR 03-2p, 2003 WL

22380904 (Oct. 20, 2003).  Plaintiff contends that pursuant to SSR 03-2p, the ALJ should have

deferred to Dr. Lincow's medical opinion as it was not inconsistent with the rest of the evidence

in the case record.

      Next, while the ALJ discussed Plaintiff's complaints related to her CRPS, Dr. Lincow's

medical opinion, and the medical record as a whole in his ruling, Plaintiff contends he

"summarily dismissed" the severity of Plaintiff's CRPS diagnosis by noting that "Plaintiff's

'skin was warm and dry; there was no sensory deficit; and there was no focal neurological

deficit.'"  (Pl.'s Br., ECF No. 6, at 14; R. 26).  According to Plaintiff, the ALJ's reference to

Plaintiff's skin being warm and dry and the lack of sensory and focal neurological deficits does

not "negate or begin to account for the chronic pain Plaintiff experiences in her lower

extremities."  (Pl.'s Br., ECF No. 6, at 15).  Therefore, the ALJ improperly rejected Dr. Lincow's

medical opinion regarding the severity of Plaintiff's CRPS.  (*Id.*, ECF No. 6).

      In response, the Commissioner first notes that the rule directing that medical opinions of

treating providers be given deferential weight has since been "replaced by regulations that

eliminated the assignment of weight to any opinion."  (Resp., ECF No. 7, at 11 (citing *Gallagher*

*v. Kijakazi*, No. CV 20-5701, 2022 WL 283017, at *5 (E.D. Pa. Jan. 31, 2022))).  Under the current regulations, ALJs must evaluate all medical opinions for persuasiveness based on several factors, not giving any extra weight to the medical opinions and impressions of treating providers.  *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Next, the Commissioner contends that competing medical opinions and impressions were offered regarding the severity of Plaintiff's CRPS diagnosis, and that the ALJ considered the medical record as a whole, ultimately finding that the medical opinion of Dr. Lincow was overly restrictive and not supported by the rest of the medical evidence.  (Resp., ECF No. 7, at 10-11). This conclusion was consistent with Dr. Nugent's conclusions, and according to the Commissioner, entirely permissible under the current analytical framework.  (*Id.*, ECF No. 7).

### 2.    Analysis

First, to the extent that Plaintiff relies on the rule repeated in SSR 03-02p, 2003 WL 22380904 (citing SSR 96-2p, SSR 96-5p), that "[m]edical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to deference," it is no longer valid.  *Gallagher*, 2022 WL 283017, at *5.  Instead, that rule has since been replaced by regulations that eliminated the assignment of weight to any opinion.  Under the current regulations, ALJs must evaluate all medical opinions for persuasiveness based on several factors, not giving any extra weight to the medical opinions and impressions of treating providers.  *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Moving to Plaintiff's second contention, this Court agrees that the ALJ's stated reason for discounting Dr. Lincow's medical opinion is insufficient.

In making an RFC determination, the ALJ must consider all evidence before him.  *See Plummer*, 186 F.3d at 429.  That evidence includes medical records, observations made during

formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); 20 C.F.R. § 404.1545(a). An ALJ must consider the medical opinions together with the rest of the relevant evidence, and explain the weight given to those opinions in her decision. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Id.* at 361 (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)). Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See, e.g., Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). An "ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" *Mason*, 994 F.2d at 1067 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)); *see also Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir.1986). "[T]he ALJ need not mention every piece of relevant evidence in the record." *Lozado v. Barnhart*, 331 F. Supp. 2d 325, 337 (E.D. Pa. 2004) (citing *Fargnoli*, 247 F.3d at 42). This is particularly true where "none of this

evidence consists of findings contrary to the findings upon which the ALJ based his conclusion as to the severity of Plaintiff's impairments."  *Id.*

Here, in rejecting Dr. Lincow's opinion that Plaintiff "is able to perform sedentary duties with no lifting more than 10 pounds, no standing more than 30 minutes, no sitting more than 1 hour, breaks as tolerated and breaks upon request, and no kneeling, twisting, bending, or squatting," the ALJ stated that this opinion was not "supported by the clinical and laboratory signs and findings of record."  (R. 26).  The rationale behind the ALJ's rejection of Dr. Lincow's opinion was that although "examination has shown that the skin showed some lace-like purplish discoloration to the right lateral leg," Plaintiff's skin was warm and dry with no sensory or focal neurological deficits.  (*Id.*).  The ALJ concluded that these findings did not support the "restrictive assessments" determined by Dr. Lincow.  (*Id.*).

The ALJ did not explain how this fact, by itself, discounted the existence of Plaintiff's pain, its severity, or how it affected her functionality.  The contention here is not that Plaintiff's CRPS has led to a sensory or neurological deficit; quite the opposite, as multiple physicians noted that Plaintiff's legs were extremely sensitive to the touch and that she reported severe pain when her legs were physically examined.  (R. 312, 382-83, 439-40, 515-16, 524, 560, 617).[7]

---

[7] Dr. Weinstein noted severe allodynia throughout Plaintiff's right lower extremity with associated hypersensitivity to pinprick throughout her right thigh, leg, and foot.  (R. 382-83).  Dr. Young noted that Plaintiff had "severe" CRPS in her bilateral extremities and that her right lower extremity was tender to the touch.  (R. 439-40).  Amy Jo Krall, a certified registered nurse practitioner for Wellspan Orthopedics, noted that Plaintiff was "tender" at her distal quadriceps tendon and proximal pole.  (R. 312).  Dr. Grandimo noted that Plaintiff was "[e]xtremely hypersensitive to any touch along the quadriceps down to the mid tibia area.  Extremely difficult to examine patient secondary to pain.  Multiple attempts were made to examine the right knee of the patient and she refused any type of exam.  Again, any attempt to move or touch the leg with any type of force, the patient would pull away and become extremely upset."  (R. 515-16).  Dr. Buerk noted that "[e]xamination of the bilateral lower extremities shows significant pain with any motion of the lower extremity joints.  She has significant pain with any palpation of the lower extremities, even to light touch. . . .  At this point the examination was completed due to

Plaintiff herself testified that there were times where she could not complete normal, everyday tasks due to her pain, (R. 40-43), and Dr. Lincow opined that her pain severely limited her physical capabilities, (R. 476).  It is this pain and hypersensitivity that Plaintiff contends debilitates her.

The ALJ may not "reject evidence for no reason or for the wrong reason." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Here, the fact that Plaintiff's skin was warm and dry with no sensory or focal neurological deficits does not sufficiently account for the rejection of Dr. Lincow's opinion.

While the Commissioner points to record evidence that might support the ALJ's rejection of Dr. Lincow's opinion,[8] the ALJ did not rely upon such evidence or rationale.  That is an important distinction, because courts are not allowed to rely on after-the-fact justifications by the Commissioner to bolster an ALJ opinion that does not adequately deal with contrary evidence. *See Fongsue v. Saul*, No. 20-574, 2020 WL 5849430, at *8 (E.D. Pa. 2020) ("[T]his court is constrained to review only the ALJ's reasoning, not the post hoc arguments propounded by Defendant after the ALJ's decision") (citing *Fargnoli*, 247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."))); *Teada v. Comm'r of Soc. Sec.*, No. 19-4537, 2020 WL 1953660, at *2–3 (E.D. Pa. 2020) (citations omitted).  This Court concludes that the ALJ committed error by discounting Dr.

---

significant pain by the examinee."  (R. 524).

[8]  The Commissioner points to Dr. Nugent's State agency evaluation that the ALJ endorsed in another part of his opinion, as well as the fact that Plaintiff testified she could occasionally perform certain household chores with assistance from others, in an attempt to bolster the ALJ's rejection of Dr. Lincow's medical opinion.  (Resp., ECF No. 7, at 10-12).

Lincow's opinion without adequately addressing the contrary evidence in the record.

### C.    Remedy

Plaintiff contends that she is entitled to a finding of disability and an award of benefits.

This Court disagrees and finds that remand—rather than an award of benefits—is the appropriate

remedy.  *See Gilliland v. Heckler*, 786 F.2d 178, 184-85 (3d Cir. 1986).  An award of benefits is

only appropriate, "when no evidentiary questions remain and the outcome of the case is dictated

as a legal matter."  *See Freeman v. Berryhill*, No. 16-2610, 2017 WL 1351425, at *7 (E.D. Pa.,

2017) *report and recommendation adopted*, 2017 WL 1375185 (E.D. Pa. April 10, 2017).  That

is not the case here.  On remand, the ALJ shall further consider and weigh the medical source

opinions as outlined in this Memorandum Opinion, which may affect the ultimate outcome of the

case.

### VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**.  An

appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge